1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Frontier Law Center**
Robert Starr (183052)
Adam Rose (210880)
Manny Starr (319778)
23901 Calabasas Rd, Suite 2074
Calabasas, CA 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433
E-Mail:  robert@frontierlawcenter.com
         adam@frontierlawcenter.com
         manny@frontierlawcenter.com

Christopher Marlborough (298219)
chris@marlboroughlawfirm.com
THE MARLBOROUGH LAW FIRM, P.C.
445 Broad Hollow Road, Suite 400
Melville, New York 11757
Telephone: (212) 991-8960
Facsimile: (212) 991-8952

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

DYNITA ZEARFOSS, and JACKIE
HENDRIX-BROWN on behalf of
themselves and all others similarly
situated,

                    Plaintiffs,

        v.

RUBBERMAID, INC., and NEWELL
BRANDS, INC.,

                    Defendant.

Case No. 2:18-cv-06392-AB (ASx)

**SECOND AMENDED CLASS
ACTION COMPLAINT**

1. **Violation of Consumer Legal Remedies
   Act**
2. **Violation of False Advertising Law**
3. **Violation of Unlawful Prong of the
   Unfair Competition Law**
4. **Violation of the Fraudulent Prong of
   the Unfair Competition Law**
5. **Violation of the Unfair Prong of the
   Unfair Competition Law**

**JURY TRIAL DEMANDED**

SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Dynita Zearfoss and Jackie Hendrix-Brown ("Plaintiffs") allege the following:

## NATURE OF ACTION

1.      This is a prospective class action against Rubbermaid, Inc. and Newell Brands, Inc. f/k/a Newell Rubbermaid, Inc. (collectively, "Rubbermaid" or "Defendants") for representing that FreshWorks™ Produce Saver Products (the "Products") keep produce fresh up to 80% longer than store packaging (the "Freshness Claim") and that Products create the optimal environment for keeping produce fresh (the "Optimal Environment Claim," collectively the "Claims").

2.      The Claims set forth on the product packaging are false and misleading. the Products do not keep produce fresh up to 80% longer than store packaging and they do not create the optimal environment for keeping produce fresh.

3.      With respect to the Freshness Claim, Plaintiffs' experience and independent testing have shown that the Products do not live up to the claim. Indeed, Defendants' Freshness Claim is based on Defendants' standard for freshness, which deems a container fresh when anything less than 50% of the produce in the container is moldy, spotted and/or indented.

4.      Plaintiffs and other reasonable consumers would find Defendants' Freshness Claim deceptive, particularly since it is based on Defendants' strained and unreasonable 49% rotten standard for freshness.

5.      Defendants' Optimal Environment Claim is also false and misleading. Defendants have admitted that there is no optimal environment for all produce. Different types of produce have different optimal storage conditions, including humidity conditions, ethylene gas production rates, respiration rates and storage temperatures. Plaintiffs' experience confirmed by independent testing indicate that the Products do not perform much better than store packaging. Moreover,

independent testing reveals that the Products perform worse than store packaging and other products with respect to certain types of produce.

6.     Defendants' dissemination of the Claims to California consumers constitute violations of California's False Advertising law ("FAL"), the unfair, unlawful and fraudulent prongs of the Unfair Competition Law ("UCL"), and Consumer Legal Remedies Act ("CLRA").

7.     Plaintiffs and other class members were induced into purchasing and paid a substantial premium for the Products based on Defendants' false and misleading Claims because they were deceived into believing that they were purchasing a product that would keep their produce fresh up to 80% longer than store packaging, and one that would create the optimal environment for keeping produce fresh. As a result, Plaintiffs and the class members were injured in fact and suffered ascertainable and out-of-pocket losses. Plaintiffs and other class members are entitled to injunctive relief, restitution and damages.

## THE PARTIES

**Plaintiff Dynita Zearfoss**

8.     Plaintiff Dynita Zearfoss is a resident of Los Angeles County. In approximately May 2017, she purchased a large FreshWorks™ container at a Target location in the Westfield Mall in Culver City, California, and 3-packs of FreshWorks™ Produce Saver large and medium sized containers from Costco locations in Marina Del Rey and Inglewood California.

9.     The Product packaging depicted a variety of fresh-looking produce including lettuce, blueberries and strawberries as indicated in Figure 1 below. The Product packaging prominently displayed the Freshness Claim and the Optimal Environment Claim and showed the 21-day photographs depicted in Figures 1-3 below.  Plaintiff Zearfoss relied on these Claims on the packaging in making her purchases.

10. Plaintiff Zearfoss used the Products to store a variety of fresh produce including salad greens and packaged leaf lettuce, blueberries, strawberries, tomatoes, celery, and spinach.

11. Plaintiff Zearfoss purchased fresh produce at local supermarkets for use with the Products. She determined that the purchased produce was fresh based on the color, appearance, texture and smell of the produce.

12. Plaintiff Zearfoss has extensive experience selecting fresh produce for her personal and family use.

13. Plaintiff Zearfoss stored the produce in the Freshworks containers immediately upon her return from the supermarket. She broke the celery to fit inside the container. She then put the containers in her refrigerator.

14. At the time the produce was stored it was fresh and edible in a manner consistent with other produce she has purchased over the years.

15. The Products failed to live up to the Claims for all produce, including lettuce, blueberries and strawberries. The Products did not keep Plaintiff Zearfoss' produce fresh longer than store packaging as advertised. Nor did the Products create the optimal environment for keeping produce fresh.

16. The Products performed on par with store packaging and stayed fresh for the following approximate lengths of time: salad green and lettuce - 5 days; blueberries - two weeks; strawberries – six to seven days; tomatoes - 6 days; celery - 11 days; spinach - 6 days.

17. At the time of her purchases, Plaintiff Zearfoss was unaware that Defendants' up to 80% claim was based on their 49% rotten standard for freshness.

18. Plaintiff Zearfoss does not consider strawberries fresh when up to 49% of the strawberries in the container are moldy, spotted or indented.

19. Plaintiffs Zearfoss relied on the Freshness Claim and the Optimal Environment Claim on the packaging in making her purchases.  Plaintiff Zearfoss

would not have purchased the Products if she knew that the Claims were false and misleading.

20.     Plaintiff Zearfoss would like to be able to rely on the Claims in the future, but she will be unable to rely on them going forward. Unless Defendants are enjoined from making the representation in the future, she will not know if it makes sense to purchase the Products again.

**Plaintiff Jackie Hendrix-Brown**

21.     Plaintiff Jackie Hendrix-Brown is a resident of California and lived in Long Beach, California at the time she purchased the Product.

22.     Plaintiff  Hendrix-Brown purchased 2 three-packs of FreshWorks™ containers from Costco in Signal Hill, California.

23.     The Product packaging depicted a variety of fresh-looking produce including lettuce, blueberries and strawberries as indicated in Figure 1 below. The Product packaging prominently displayed the Freshness Claim and the Optimal Environment Claim and showed the 21-day photographs depicted in Figures 1-3 below.  Plaintiff Hendrix-Brown relied on these Claims on the packaging in making her purchases.

24.     Plaintiff Hendrix-Brown used the Products to store a variety of fresh produce including strawberries and lettuce.

25.     Plaintiff Hendrix-Brown purchased fresh strawberries and lettuce at Costco for use with the Products. She determined that the purchased produce was fresh based on the color, appearance, texture and smell of the produce.

26.     Plaintiff Hendrix-Brown has extensive experience selecting fresh produce for her personal and family use.

27.    Plaintiff Hendrix-Brown stored the produce in the Freshworks containers immediately upon her return from the supermarket. She then put the containers in her refrigerator.

28.    At the time the produce was stored it was fresh and edible in a manner consistent with other produce she has purchased over the years.

29.    The Products failed to live up to the Claims for all of the produce she used it with. The Products did not keep Plaintiff Hendrix-Brown produce fresh longer than store packaging as advertised. Nor did the Products create the optimal environment for keeping her produce fresh.

30.    The Products performed on par with store packaging and stayed fresh for the following approximate lengths of time: strawberries – six to seven days; lettuce about five days.

31.    At the time of her purchases, Plaintiff Hendrix-Brown was unaware that Defendants' up to 80% claim was based on their 49% rotten standard for freshness.

32.    Plaintiff Hendrix-Brown does not consider strawberries fresh when up to 49% of the strawberries in the container are moldy, spotted or indented.  Plaintiff Hendrix-Brown would never purchase produce where 49% if the produce was moldy spotted or indented.

33.    Plaintiff Hendrix-Brown relied on the Freshness Claim and the Optimal Environment Claim on the packaging in making her purchase.  She would not have purchased the Products if she knew that the Claims were false and misleading.

34.    Plaintiff Hendrix-Brown would like to be able to rely on the Claims in the future, but she will be unable to rely on them going forward. Unless Defendants are enjoined from making the representation in the future, she will not know if it makes sense to purchase the Products again.

**Defendants**

---

SECOND AMENDED CLASS ACTION COMPLAINT                                          5

35.     Defendant Newell Brands, Inc., f/k/a Newell Rubbermaid, Inc. ("Newell"), is a Delaware corporation with its principal place of business in Hoboken, New Jersey.

36.     Defendant Rubbermaid, Inc. is a Delaware corporation with its principal place of business in Atlanta, Georgia.  It is a wholly owned subsidiary of Newell.

## JURISDICTION AND VENUE

37.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs.

38.     The Court has personal jurisdiction over Defendants because Defendants marketed and sold the Products in the State of California and Plaintiffs purchased the Products in the State of California.

39.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

40.     Defendants market and sell a line of food storage containers called FreshWorks™ Produce Saver Products.  The Products are sold in small medium and large sizes and sold individually and in multipacks of various sizes. The Products are sold at a substantial premium in comparison to both free store packaging and standard food storage containers.

41.     Defendants maintain on the Product packaging that the Products are capable of keeping produce fresh up to 80% longer than store packaging.

42.     The outside packaging for the Products prominently states in large bold print "Keeps Produce Fresh Up To **80% LONGER**.* Moreover, the product packaging features a photo of an assortment of produce including, a leafy green vegetable, blueberries and strawberries.

43.     The Freshness Claim is prominently featured on the front of the Product packaging in large high contrast lettering. The packaging also includes the following fine print disclaimer in tiny low contrast lettering: "Based on strawberries in

1  FreshWorks containers vs. store packaging" ("*Based on strawberries in FreshWorks™ containers vs. store

2  packaging."). Figure 1 below is photograph of the front product packaging. The tiny

3  disclaimer is located in the bottom center of the label.



**Figure 1: FreshWorks™ Large Size Container**

44.    In addition, the reverse side of the packaging includes Defendants'

Optimal Environment Claim. *See* Figure 2 below ("**FreshVent™ Lid** patented

membrane naturally regulates the flow of $O_2$ and $CO_2$ to create the optimal

environment so your produce stays farm fresh").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Figure 2: FreshWorks™ Large Size Container, Reverse Side**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

45.    Moreover, certain Product packaging, including the multipacks purchased by Plaintiff Zearfoss, compares moldy and rotten-looking strawberries purportedly stored in product packaging against pristine fresh-looking strawberries purportedly stored in FreshWorks™ containers for 21 days.  *See* Figure 3 below.



**Figure 3: FreshWorks™ Product packaging**

46.    The Claims are reinforced on Defendants' website, in its marketing and advertising materials, and in certain product packaging in which Defendants promoted the product as a revolutionary and innovative product based on breakthrough technology that extends the freshness of produce based on principles of chemistry.  For instance, Defendants' marketing and advertising materials describe the product as a "breakthrough food storage container" and state: "Revolutionary FreshVent™ technology creates an optimal environment for fruits and vegetables"

and "Freshvent™ technology regulates the flow of oxygen and carbon dioxide for the ideal environment."

### Defendants' Freshness Claim is False and Misleading

47.     Defendants' Claim that the Products keep produce fresh up to 80% longer than store packaging is false and misleading to Plaintiffs and other reasonable consumers.

48.     Plaintiffs used the Products properly. They observed that the Products did not keep their produce fresh longer than store packaging under normal circumstances for up to 80% longer than store packaging. In their experience, the products did not work better than store packaging.

49.     Similarly, an independent consumer products organization which conducts unbiased product testing determined that the Product did not keep produce fresh much longer than the original containers, and in some instances performed worse than standard containers. *See* Exhibit 1 annexed hereto.

50.     In stark contrast to Defendants depiction of fresh strawberries after 21 days of storage in FreshWorks™ containers, the organization noted that none of the food stored in FreshWorks™ containers including raspberries, strawberries, mesclun mix and heads of leaf lettuce were good enough to eat after two weeks. Moreover, raspberries stored in store packaging were fresher than those stored in FreshWorks™ containers.

51.     Defendants' Freshness Claim is based on Defendants' own product testing which was rigged to produce the desired result.  Under Defendants' testing conditions, an entire container of strawberries was determined to be fresh when anything less than 50% of its contents were moldy, spotted or indented.

52.     The 49% rotten standard for freshness is inconsistent with a standard for freshness applied by Plaintiffs' or other reasonable consumers.

53.     Reasonable consumers acting reasonably under the circumstances have been and are misled by Defendants partial representations touting the freshness

claim, but not disclosing the material fact of the 49% rotten standard upon which the claim is based.

54.    The National Advertising Division ("NAD") of the Better Business Bureau raised substantial questions about Defendants' methodology. According other NAD, it "was troubled by the basis by which the strawberries in the containers used in this test were deemed "fresh," and whether this measure was consumer relevant." "NAD questioned whether consumers—observing half (or nearly half) of a container of moldy strawberries—would agree that the container of strawberries (or even the remainder) could be considered "fresh" or suitable for consumption. *See* Exhibit 2 annexed hereto.

55.    The NAD also questioned whether it was sufficient to adequately qualify the dominant, overarching claim that the advertiser's product "keeps *produce* fresher up to 80% longer" or whether it, in essence, contradicts the broader message conveyed to consumers concerning "produce" generally. *Id*. at 8 (emphasis in original). The NAD concluded that:

> Given the vast array of fruits and vegetables that make up the category of "produce" (and depictions of other produce in the challenged advertisements and product packaging), NAD determined that Rubbermaid's disclosure was insufficient to adequately limit its broad performance claim to just strawberries and concluded that its express claim "Keep Produce Fresh up to 80% Longer," alone and in conjunction with other produce imagery will reasonably be understood by consumers to mean that the "80%" longer freshness claim is applicable to, and can be achieved, beyond merely strawberries but to other produce as well.

56.    With respect to "up to claims," like Defendants' Freshness Claim, the Federal Trade Commission ("FTC") commissioned its own clinical study to ascertain consumers' expectations with respect to these types of claims. The FTC issued a

report and guidance to advertisers warning them that "up to" statements can be misleading unless consumers are likely to achieve the maximum results under normal circumstances. *See* Exhibits 3 and 4, annexed hereto.

57.    Defendants' Freshness Claim fails to satisfy any standard that a reasonable consumer would apply to the Claim, including the Federal Trade Commission standard for "up to" claims.

58.    Based on Defendants' Freshness Claim, Plaintiffs reasonably believed that their produce would stay fresh substantially longer using the Products rather than store packaging, but their produce did not stay fresh substantially longer.

59.    Plaintiffs and a substantial number of other consumers acting reasonably under the circumstances, are likely to be deceived by the Freshness Claim predicated on Defendants' 49% rotten standard for freshness.

**Defendants' Optimal Environment Claim Is False and Misleading**

60.    Defendants' claim that the Products create an optimal environment for produce is false and misleading.

61.    Defendants' Optimal Environment Claim indicates to reasonable consumers that the product creates the optimal environment for all kinds of produce, not just strawberries. Indeed, Defendants have claimed that the Products "create an optimal environment for fruits ***and vegetables***." (emphasis added). Moreover, in addition to strawberries, the product packaging includes photos of a leafy green vegetable and blueberries.

62.    The Products do not create the optimal environment for strawberries.

63.    In addition, the Products do not create the optimal environment for produce generally.  There is no optimal environment for produce.

64.    Produce includes a large diverse group of plants including leafy greens, beans, root vegetables, fleshy vegetables, citrus fruits, berries and pome fruits (like apples and pears).  Many variables interact to determine the optimal environment for a particular type of produce.

65.     Some produce stays fresher in ultra-high humidity conditions and others lower humidity environments. For instance, lettuce thrives in an extremely high humidity environment of 98-100%. Whereas other produce stays fresher longer in lower humidity environments.

66.     Different types of produce also have different ethylene gas production rates, which greatly affect their optimal environment.  Ethylene gas production accelerates the ripening process and induces textural changes, color changes and tissue degradation.  For instance, apples and pears emit a large amount of ethylene gas, while blueberries and cherries produce very little ethylene gas.

67.     In addition, different types of produce vary with respect to other variables, including storage temperature, and respiration rates. Finally, all of these variables interact to determine the rate at which a particular produce item will lose its freshness. The complexities of these interactions result in different optimal storage conditions for each type of produce.

68.     Defendants, however, based their claim only on the storage of strawberries to the exclusion of all other produce.

69.     An independent product testing organization found that FreshWorks™ Products performed worse than store packaging and another product at keeping raspberries fresher longer.  Moreover, the Products performed worse than another product in keeping mesclun mix and leaf lettuce fresh.

70.      Defendants have admitted that "there is no single environment that will be the perfect storage environment for all types of produce."  *See* Exhibit 2 at 7. Despite this admission, Defendants continue to make this false and misleading claim to consumers on the Products' packaging.

71.     Even if Defendants' container were optimized for strawberries, which Plaintiffs' allege is false and misleading, Defendants do not market the Products as strawberry containers, but as general produce containers that create the optimal environment for all produce.

---

SECOND AMENDED CLASS ACTION COMPLAINT                                              13

72.    Based on Defendants' Optimal Environment claim, Plaintiffs reasonably believed that the Products would create the optimal environment for keeping produce fresh, but the Products failed to do that for strawberries or for any produce.

73.    Plaintiffs and a substantial number of other consumers acting reasonably under the circumstances, are likely to be deceived by the Optimal Environment Claim.

## CLASS ACTION ALLEGATIONS

74.    Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in California who, within the relevant statute of limitations period, purchased the Products (the "Class").

75.    Pursuant to L.R. 23-2.1, the case is maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(3).

76.    The Class is so numerous that joinder of all members is impractical. Although Plaintiffs do not yet know the exact size of the Class, the Product is sold in major retail stores across the State, including stores such as Target, Costco and Wal-Mart. On information and belief, the Class includes more than one hundred thousand members and the nationwide class includes hundreds of thousands of additional class members.

77.    The Class is ascertainable because the Class Members can be identified by objective criteria – the purchase of the Products during the Class Period. Individual notice can be provided to Class Members "who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

78.    Pursuant L.R. 23-2.2, there are numerous questions of law and fact common to the Class which predominate over individual actions or issues, including but not limited to:

(a)    Whether the Freshness Claim is false and/or misleading;

(b)    Whether the Optimal Environment Claim is false and/or misleading;

(c)     Whether Defendants' Product packaging and marketing of the
Products is false, misleading, and/or deceptive;

(d)     Whether Defendants' marketing of the Products is an unfair
business practice;

(e)     Whether Defendants violated the CLRA;

(f)     Whether Defendants violated the UCL;

(g)     Whether Defendants violated the FAL;

(h)     Whether Class Members suffered an ascertainable loss as a result
of Defendants' misrepresentations; and

(i)     Whether, as a result of Defendants' misconduct as alleged herein,
Plaintiffs and the Class Members are entitled to restitution,
injunctive and/or monetary relief and, if so, the amount and
nature of such relief.

79.     Plaintiffs' claims are typical of the claims of other prospective Class
member as all members of the Class are similarly affected by Defendants' wrongful
conduct.  Plaintiffs have no interests antagonistic to the interests of the other
members of the Class.  Plaintiffs and all members of the Class have sustained
economic injury arising out of Defendants' violations of common and statutory law
as alleged herein.

80.     Plaintiffs are adequate representatives of the Class because their
interests do not conflict with the interests of the Class Members they seek to
represent, they have retained counsel competent and experienced in prosecuting class
actions, and they intend to prosecute this action vigorously.  The interests of the
Class Members will be fairly and adequately protected by Plaintiffs and their
counsel.

81.     The class mechanism is superior to other available means for the fair
and efficient adjudication of the claims of Plaintiffs and the Class Members.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**First Cause of Action**

**Violation of the Consumer Legal Remedies Act**

82.    Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

83.    Plaintiffs bring this Count individually and on behalf of the Class.

84.    Plaintiffs and the Class Members are consumers who purchased the Products for personal, family, or household purposes.  Accordingly, Plaintiffs and the Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).  Plaintiffs and the Class Members are not sophisticated experts with independent knowledge of the alleged scientific principles behind or efficacy of the Products.

85.    At all relevant times, the Products constituted a "good" as that term is defined in Cal. Civ. Code § 1761(a).

86.    At all relevant times, Defendants were "persons" as that term is defined in Civ. Code § 1761(c).

87.    At all relevant times, Plaintiffs' purchase of the Products, and the purchases of the Products by other Class Members, constituted "transactions" as that term is defined in Cal. Civ. Code § 1761(e).  Defendants' actions, representations, and conduct has violated, and continues to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of the Products to consumers.

88.    The policies, acts, and practices described in this Complaint were intended to and did result in the sale of the Products to Plaintiffs and the Class. Defendants' practices, acts, policies, and course of conduct violated the CLRA §1750 *et seq.* as described above.

89.    Defendants represented that the Products had sponsorship, approval, characteristics, uses, and benefits which it did not have in violation of Cal. Civ. Code § 1770(a)(5).

SECOND AMENDED CLASS ACTION COMPLAINT                                                    16

90.     Defendants represented that the Products were of a particular standard, quality, and grade, when it was another, in violation of California Civil Code § 1770(a)(7).

91.     Defendants violated California Civil Code §§ 1770(a)(5) and (a)(7) by: 1) representing that the Products keep produce fresh up to 80% longer than store packaging, when they did and do not; and 2) representing that the Products create the optimal environment for produce storage when they do not.

92.     Defendants advertised the Products with the intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA since the Products do not keep produce fresh up to 80% longer than store packaging and do not create the optimal environment for produce storage.

93.     Plaintiffs and the Class Members suffered injuries caused by Defendants' misrepresentations because: (a) Plaintiffs and the Class Members would not have purchased the Products if they had known the true facts; (b) Plaintiffs and the Class paid an increased price for the Products due to the mislabeling of the Products; and (c) the Products did not have the level of quality, effectiveness, or value as promised.

94.     Prior to the filing of this Complaint, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a).

95.     Wherefore, Plaintiffs seek damages, restitution, and injunctive relief for this violation of the CLRA.

## Second Cause of Action

## Violation of the False Advertising Law

96.     Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

97.     Plaintiffs bring this Count individually and on behalf of the Class.

98.    California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

99.    Throughout the Class Period, Defendants committed acts of false advertising, as defined by the FAL, by using false and misleading statements to promote the sale of the Products, as described above, and including, but not limited to: 1) representing that the Products keep produce fresh up to 80% longer than store packaging, when they did and do not; and 2) representing that the Products create the optimal environment for produce storage when they do not.

100.    Defendants knew or should have known, through the exercise of reasonable care, that their statements were untrue and misleading.

101.    Defendants' actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

102.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' FAL violation because: (a) Plaintiffs and the Class would not have purchased the Products if they had known the true facts regarding the effectiveness of the Products; (b) Plaintiffs and the Class paid an increased price due to the misrepresentations about the Products; and (c) the Products did not have the promised quality, effectiveness, or value.

103.    Plaintiffs bring this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue corrective disclosures to consumers.  Plaintiffs and the Class are therefore

entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

**Third Cause of Action**

**Violation of the "Unlawful Prong" of the Unfair Competition Law**

104.  Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

105.  Plaintiffs bring this Count on behalf of the Class.

106.  The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …." The UCL also provides for injunctive relief and restitution for UCL violations.

107.  "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

108.  Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL "unlawful" violation. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

109.  Defendants violated the "unlawful prong" by violating the CLRA, and the FAL, as described herein.

110.  As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "unlawful prong"

violation because: (a) Plaintiffs and the Class would not have purchased the Products if they had known the true facts regarding the effectiveness and contents of the Products; (b) Plaintiffs and the Class paid an increased price due to the misrepresentations about the Products; and (c) the Products did not have the promised quality, effectiveness, or value.

111.   Pursuant to Bus. & Prof. Code §17203, Plaintiffs and the Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) attorneys' fees and costs pursuant to Code of Civil Procedure §1021.5.

**Fourth Cause of Action**

**Violation of the "Fraudulent Prong" of the Unfair Competition Law**

112.   Plaintiffs repeat the allegations contained in the paragraphs above as if fully set forth herein.

113.   Plaintiffs bring this Count on behalf of the Class.

114.   The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

115.   Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL because by: 1) representing that the Products keep produce fresh up to 80% longer than store packaging, when they did and do not; and 2) representing that the Products create the optimal environment for produce storage when they do not.

116.   Plaintiffs and the Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the Products, and they acted reasonably when they purchased the Products based on their belief that Defendants' express and implied representations were true.

117.    Defendants knew or should have known, through the exercise of reasonable care, that their representations about the Products were untrue and misleading.

118.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "fraudulent prong" violation because: (a) Plaintiffs and the Class would not have purchased the Products if they had known the true facts regarding the effectiveness of the Products; (b) Plaintiffs and the Class paid an increased price due to the misrepresentations about the Products; and (c) the Products did not have the promised quality, effectiveness, or value.

119.    Pursuant to Bus. & Prof. Code §17203, Plaintiffs and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

**Fifth Cause of Action**

**Violation of the "Unfair Prong" of the Unfair Competition Law**

120.    Plaintiffs repeats the allegations contained in the paragraphs above as if fully set forth herein.

121.    Plaintiffs bring this Count on behalf of the Class.

122.    The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

123.    Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious

to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' conduct is unfair in that the harm to Plaintiffs and the Class arising from Defendants' conduct outweighs the utility, if any, of those practices.

124.   Defendants' practices as described herein are of no benefit to consumers who are tricked into believing the Products keep produce fresh up to 80% longer than store packaging and create the optimal environment for produce storage.

125.   As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "unfair prong" violation because: (a) Plaintiffs and the Class would not have purchased the Products if they had known the true facts regarding the effectiveness and contents of the Products; (b) Plaintiffs and the Class paid an increased price due to the misrepresentations about the Products; and (c) the Products did not have the promised quality, effectiveness, or value.

126.   Pursuant to Bus. & Prof. Code §17203, Plaintiffs, and the Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

A.     Determining that this action is a proper class action;

B.     For an order declaring that the Defendants' conduct violates the statutes referenced herein;

C.     Awarding compensatory and punitive damages in favor of Plaintiffs, members of the Class against Defendants for all damages sustained as a result of the

Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

     D.    Awarding injunctive relief against Defendants to prevent continuing their ongoing unfair, unconscionable, and/or deceptive acts and practices;

     E.    For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

     F.    Awarding Plaintiffs and members the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

     G.    Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

     Plaintiffs hereby demand a trial by jury on all claims so triable in this action.

Dated:  December 22, 2019         FRONTIER LAW CENTER

         /s/ Robert L. Starr
         Robert L. Starr (183052)
         Adam Rose (210880)
         Manny Starr (319778)
         23901 Calabasas Rd, Suite 2074
         Calabasas, CA 91302
         Telephone: (818) 914-3433
         Facsimile: (818) 914-3433
         E-Mail:  robert@frontierlawcenter.com
                  adam@frontierlawcenter.com
                  manny@frontierlawcenter.com

         Christopher Marlborough (298219)
         THE MARLBOROUGH LAW FIRM, P.C.
         445 Broad Hollow Road, Suite 400
         Melville, New York 11757
         Telephone: (212) 991-8960
         Facsimile: (212) 991-8952
         chris@marlboroughlawfirm.com

         Attorneys for Plaintiffs